IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**DEAVINA EWERT,**

      **Plaintiff,**

  vs.                                                Civil Action 2:09-CV-131
                                                        Judge Smith
                                                        Magistrate Judge King

**HOLZER CLINIC, INC.,** *et al.*,

      **Defendants.**


## OPINION AND ORDER

This is a diversity action in which plaintiff, the administrator of the Estate of Dealena C. Bell ("the decedent"), asserts survivorship and wrongful death claims, alleging that the defendants' medical malpractice proximately caused the decedent's death. Defendants are Holzer Clinic, Inc., Holzer Medical System, Inc., and Renuka Kandula, M.D. This matter is now before the Court on *Plaintiff's Motion for Protective Order*, Doc. No. 8, and defendants' responsive *Joint Motion to Compel Discovery,* Doc. No. 10. At issue in these motions is the extent to which, if at all, and the form in which defendants are entitled to all records relating to the decedent's medical care. Also before the Court is *Plaintiff's Second Motion for Protective Order*, Doc. No. 16.[1]

## FACTUAL BACKGROUND

The *Complaint*, Doc. No. 2, alleges that, in August 2007, the decedent was treated by defendant Kandula at the Holzer Medical Center

---

[1] Plaintiff's *Motion for Discovery*, Doc. No. 23, is not yet ripe for resolution, nor is the *Motion to Dismiss for Lack of Jurisdiction,* Doc. No. 27.

emergency room.  *Id.,* ¶¶9-11.[2]  Defendant Kandula ordered, *inter alia,* a hypertonic saline solution or sodium infusion.  *Id.,* ¶15.  The decedent was discharged on August 29, 2007, but was re-admitted to the Holzer Medical Center on that same date.  *Id.,* ¶¶18-20.  The decedent's condition deteriorated rapidly and, after transfer to another medical facility, the decedent was diagnosed with central pontine myelinolysis. *Id.*, ¶¶22-26.  The decedent was transferred to a hospice facility where she died on September 14, 2007.  *Id.*, ¶26.  Plaintiff alleges that the decedent's death was proximately caused by the defendants' failure to properly monitor the sodium infusion.  *Id.*, ¶¶30-34.

### ***PLAINTIFF'S MOTION FOR PROTECTIVE ORDER* AND  *DEFENDANTS' JOINT MOTION TO COMPEL DISCOVERY***

Defendants, through their counsel, submitted to plaintiff HIPAA compliant forms that would authorize disclosure to defense counsel, directly from her medical providers, of all medical records relating to the decedent. *See Plaintiff's Motion for Protective Order*, *Exhibits A-H*. Plaintiff refused to execute the authorizations. *Id., Exhibit I.*  In response, plaintiff initially proposed that her counsel obtain the medical records and review the records for relevance and privilege prior to production to defendants.  *Plaintiff's Motion for Protective Order*, p.1.  Information deemed objectionable would be redacted, a privilege log would be produced and the documents withheld would be submitted to the Court for its own *in camera* review.  *Id.*  Thereafter, plaintiff represented that almost all of the requested medical records had in fact been produced in unredacted form to defense counsel.  *Plaintiff's Status*

---

[2]The *Complaint* reflects two paragraphs 10.  *Complaint*, pp. 3-4.

*Report,* p. 2, Doc. No. 19. "Plaintiff believes that defendants in fact have complete copies of 95 percent of medical records that Holzer Medical Center, Inc., has requested and will soon have the [remaining] report as well." *Id.,* p.3. However, defendants have presented some evidence suggesting that not all of the treatment records sought by defendants have been produced. *Notice of Supplemental Evidence in Support of Motion to Compel*, p.1, Doc. No. 22.[3]

**Standard**

The Federal Rules of Civil Procedure afford to parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. ..." F.R. Civ. P. 26(b)(1). However, courts must limit the frequency or expense of discovery otherwise permitted by the rules where the discovery sought is unreasonably cumulative or duplicative, where the party seeking discovery has had sufficient opportunity to obtain the information or where the burden or expense of the proposed discovery outweighs its likely benefits. F.R. Civ. P. 26(b)(2)(C)(i),(ii),(iii). Moreover, a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. ..." F.R. Civ. P. 26(c)(1).

**Discussion**

Plaintiff initially resisted production of all of plaintiff's medical records, taking the position that certain of those medical

---

[3] It is unclear to the Court, and apparently to the parties as well, whether there has been any failure to produce on plaintiff's part and, if so, whether such failure was deliberate or inadvertent. *See Notice of Supplemental Evidence in Support of Motion to Compel, Exhibit A* .

records, *e.g.*, gynecological records and psychiatric or psychological records, are irrelevant to the issues presented in this case. *Plaintiff's Motion for Protective Order*, p.5. Defendants, on the other hand, argue that, in this complex medical malpractice action involving a claimed wrongful death, their experts require access to all of the decedent's medical records in order to evaluate issues relating to the proper standard of care, proximate causation and the decedent's life expectancy. *Defendants' Motion to Compel*, p.5.

This Court is persuaded that the medical records requested by defendants are relevant to the plaintiff's claims and the defendants' defenses. *See* F.R. Civ. P. 26(b)(1). Moreover, O.R.C. §2317.02(B)(1)(a)(iii), which applies to this diversity action, *see* F.R. Evid. 501, makes clear that the documents sought by defendants are not privileged. The Court also concludes that the procedure initially proposed by plaintiff, *i.e.*, initial review of the records by plaintiff's counsel with subsequent submission of withheld documents for *in camera* review by the Court, does not permit defendants to adequately prepare their defense: neither plaintiff's counsel nor this Court possesses the medical expertise expected of defendants' medical experts.

The issue, then, devolves to defendants' right to obtain all of the decedent's medical records directly from her treating providers. This Court concludes that they may. The history of the parties' dispute in this action suggests that plaintiff's counsel misperceived defendants' right to the discovery sought. Moreover, it appears that plaintiff has not yet obtained at least some of the requested records. Finally, there is some concern as to whether or not plaintiff has produced to defense counsel all of the records obtained by her from the providers. Under

4

these circumstances, it cannot be said that the discovery sought by defendants through the requested execution of the medical releases is unreasonably cumulative or duplicative, is otherwise available to the defendants or imposes on plaintiff a burden or expense outweighed by the likely benefit of the requested discovery. *See* F.R. Civ. P. 26(b)(2)(C)(i),(ii), (iii). Furthermore, plaintiff has failed to establish that the procedure proposed by her counsel is necessary to protect her "from annoyance, embarrassment, oppression, undue burden or expense. ..." *See* F.R. Civ. P. 26(c)(1).

The authority upon which plaintiff primarily relies in resisting defendants' request, *Moody v. Honda of America, Mfg., Inc.*, 2006 U.S. Dist. Lexis 43092, *11 (S.D. Ohio, March 26, 2006)(Kemp, M.J.), is inapposite. Unlike this wrongful death action, *Moody,* an employment action under the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.,* simply did not implicate the claimant's entire medical history. Her counsel's lack of medical expertise in making an initial relevancy review would not, under those circumstances, pose an unreasonable impediment to defendant's ability to defend against her claim. Moreover, to the extent that plaintiff appears to argue that *Moody* represents the uniform practice of this Court on requests for execution of medical authorizations, plaintiff is in error. *See, e.g., Urseth v. City of Dayton, Ohio,* 653 F.Supp. 1057, 1066 (S.D. Ohio 1986).

Accordingly, *Plaintiff's Motion to Compel*, Doc. No. 8, is **DENIED.** Defendants' *Joint Motion to Compel*, Doc. No. 10, is **GRANTED.** Plaintiff is **DIRECTED** to execute, within ten (10) days of the date of this *Opinion and Order*, the medical releases proposed by defendants.

### *PLAINTIFF'S SECOND MOTION FOR PROTECTIVE ORDER*

In *Plaintiff's Second Motion for Protective Order*, Doc. No. 16, plaintiff asks that defendants be prohibited from disclosing any of the decedent's medical records "to any person or entity not directly associated with this case." *Id.*, p.1. In opposing the motion, defendants dispute plaintiff's characterization of the medical records as "private and confidential ... under applicable federal and Ohio law. ..." *Plaintiff's Second Motion for Protective Order*, p.1. Although, for the reasons stated *supra*, this Court agrees that the decedent's medical records are not privileged under Ohio law, *see* O.R.C. §2317.02(B)(1)(a)(iii), the Court nevertheless recognizes the sensitivity of those documents. Accordingly, the Court will grant *Plaintiff's Second Motion for a Protective Order* to the extent that it seeks to limit defendants' use of those medical records to this litigation only.

**WHEREUPON**, *Plaintiff's Motion for Protective Order*, Doc. No. 8, is **DENIED**; Defendants' *Joint Motion to Compel Discovery,* Doc. No. 10, is **GRANTED** consistent with the foregoing. *Plaintiff's Second Motion for Protective Order,* Doc. No. 16, is **GRANTED.** The medical records relating to the decedent's medical care may, unless otherwise ordered by the Court, be used only for purposes of this litigation.

December 1, 2009         *s/Norah McCann King*
                                      Norah M<sup>c</sup>Cann King
                                 United States Magistrate Judge