UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Deavina Ewert, Administrator of**
**the Estate of Dealena Bell, deceased,**

        **Plaintiff,**

v.                                                        **Case No.: 2:09-cv-0131**
                                                                     **Judge Smith**
                                                                       **Magistrate Judge King**

**Holzer Clinic, Inc.,** *et al.***,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the Defendants Holzer Clinic, Inc., Holzer Medical System, Inc., and Renuka Kandula, M.D.'s Motions to Dismiss for Lack of Subject Matter Jurisdiction (Docs. 27 and 64). Plaintiff, as administrator of the estate of Dealena Bell (hereinafter "the Decedent"), brought this survival action against Defendants alleging medical malpractice. Plaintiff alleges that this Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1). Defendants challenge Plaintiff's claims that the Decedent was domiciled in California and assert that diversity jurisdiction does not exist. Plaintiff has filed a response and this matter is now ripe for review. For the reasons that follow, Defendants' Motions to Dismiss are **GRANTED**.

### I. BACKGROUND

Plaintiff, Deavina Ewert, is a resident of the State of California and is the duly appointed administrator of the estate of Dealena C. Bell, the Decedent. Plaintiff was appointed administrator by the Probate Court of Meigs County, Ohio, on July 18, 2008. Defendants Holzer

Clinic, Inc. and Holzer Medical Center, Inc. are Ohio corporations with offices in Gallipolis, Ohio. Defendant Renuka Kandula, M.D. was employed by Holzer Clinic.

On August 26, 2007, the Decedent was residing in Meigs County, Ohio, when she became seriously ill and was taken to the emergency room of a hospital owned and operated by Defendant Holzer Clinic.  The Decedent was admitted to Holzer Medical Center after she complained of having repeatedly fallen for the previous two weeks.  Holzer Medical Center assigned Dr. Kandula as the Decedent's treating physician, who ordered various tests regarding the Decedent's condition, including tests with respect to the Decedent's sodium levels.  As a result of the Decedent's tests, Defendant Kandula ordered that the Decedent be treated with three-percent saline which was to continue until the Decedent's sodium level increased to 125.  (Compl. ¶¶ 9-16).

On August 29, 2007, Defendant Holzer discharged the Decedent.  Later that day, the Decedent was readmitted to Holzer, after arriving at the emergency room in a poorly responsive condition with grunting respirations.  During her second stay at Holzer, Decedent's condition allegedly deteriorated rapidly and Decedent was placed in the Intensive Care Unit.  Defendant Dr. Kandula recommended that the Decedent be transferred to St. Mary's Medical Center ("SMMC") located in Huntington, West Virginia.  While at SMMC, it was suspected that the Decedent was suffering from central pontine myelinolysis ("CPM"), and an MRI conducted on the Decedent confirmed this condition.  Thereafter, the Decedent was transferred to Hospice of Huntington, Inc. where she died on September 14, 2007.  (Compl. ¶¶ 19-26).

Plaintiff alleges that the actions of the employees at Holzer, including Dr. Kandula, fell below the standard of care as they allowed the Decedent's sodium level to change from 114 to

132 and failed to properly monitor the infusion. Plaintiff further alleges that the Decedent's sudden increase in sodium caused her to have an osmotic imbalance. This allegedly led the Decedent to develop fatal CPM. (Compl. ¶¶ 30-32).

Plaintiff, as the administrator of the estate of the Decedent, has now brought this survival action against Defendants alleging medical malpractice. (Compl. ¶¶ 52-55). Further, Plaintiff alleges that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) since the action involves claims on behalf of the Decedent, a citizen of California, against three citizens of Ohio. However, Defendants argue that the Decedent was a domiciliary of Ohio prior to her death, which would defeat diversity jurisdiction.

## II. FACTS REGARDING CITIZENSHIP

The Decedent, Dealena Bell, was born in Santa Ana, California, on September 5, 1968. She attended school in California. She was married to Jeff Bell in September 1986, in California. The couple had a son, Brian. The couple later divorced.

The Decedent remained in California until about 1993 or 1994, when she moved to Colorado to be with her mother and sisters. She lived with her mother until her mother's death in January 2003, and then she returned to California. After about four to six months, the Decedent again left California and traveled to Phoenix, Arizona. While in Arizona, she met and traveled with a truck driver to Syracuse, Ohio, just outside of Pomeroy, the county seat of Meigs County, Ohio. The Decedent lived with him for about a year, beginning in late 2003 or early 2004. (Ewert Depo. at 21-25, 31).

Soon after arriving in Ohio, the Decedent met Gerald "Boone" Arnold, who she asked to help her find some work. Arnold talked to his friend John Eynon, who hired the Decedent to

clean his house. Arnold testified that the Decedent bought a Ford car and got it licensed so she would have a way of getting back and forth to work. (Arnold Depo. at 6-10). Arnold also stated that "He give her the property. He give her the truck, two cars." (*Id*. at 11). He further stated that his friend was "old and his wife just passed away, I guess, and he needed somebody there to help clean the house and stuff like that. He'd do anything in the world for her. Anything she wanted, he'd go get it." (*Id*. at 15).

Arnold described that the Decedent drove Eynon everywhere because he had lost his license. She cooked for Eynon and would "get on that old tractor sometimes and cut grass for him," as well as "she'd scrub the porch off and everything, in addition to her house cleaning." (Arnold Depo. at 22-25).

Mr. Arnold was also questioned about the Decedent's intent to stay in Ohio and he responded that he didn't know, but did say, "She always talked about going to California is all I knew, you know. She's always talk about going back, but she never did. No." (Arnold Depo. at 28-29).

Beverly Mooney, one of the Decedent's three sisters, stated that the Decedent regularly expressed her intention to return to California as soon as she was able to "scrape enough money together" and no longer had to care for Mr. Eynon, whom she had grown to like. (Mooney Decl.). Mooney further stated that the Decedent expressed her unhappiness with living in Ohio and said how much she missed her family and wanted to be closer to her son and family in California. (*Id*.).

Plaintiff, as administrator, stated that she never found any evidence that Lena had opened a bank account in Ohio, purchased any real or personal property in Ohio having any value, or

-4-

established a permanent residence in Ohio, or joined a church, club or any other organization in Ohio. (Ewert Decl.). Plaintiff further stated that the Decedent didn't have any utilities registered in her name or charge accounts at any retail establishments, nor did she register to vote in Ohio.

The Decedent did not report any earnings with the Internal Revenue Service during the years 1997 through 2002. For the years 2003 through 2007, she reported the following earnings: $336 from Wayne and Winfred Dent; and $71 from Bob Evans Farms, Inc., in Columbus, Ohio. However, the Decedent regularly sought care from the physicians at the Holzer Clinic and availed herself of state services in Ohio, such as the Medicaid system. Further, the Decedent was employed in Ohio and owned real and personal property in Ohio.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a case may be dismissed when the plaintiff fails to meet the requirements of 28 U.S.C. § 1332(a). 28 U.S.C. § 1332(a) grants federal district courts subject matter jurisdiction to resolve cases between "citizens of different states" who satisfy the $75,000 amount in controversy requirement. When a Defendant moves to dismiss for lack of subject matter jurisdiction, "the Plaintiff has the burden of proving jurisdiction in order to survive the motion." *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003). In considering this type of motion, the factual allegations set forth in the pleading are not presumed to be true. *Ohio National Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Since the subject matter jurisdiction of the federal court is involved, the issue of a party's citizenship may be raised at any time, by any party or the court itself. Fed. R. Civ. P. 12(h)(3). It is well-settled that "the party seeking to invoke federal jurisdiction must allege its existence,

and, if there is a dispute, that party has the burden of proof." Erwin Chemerinsky, Federal Jurisdiction 300 (4th ed. 2003) (*citing Cameron v. Hodges*, 127 U.S. 322 (1888)). As Plaintiff is the party seeking to invoke federal jurisdiction in the instant matter, Plaintiff bears the burden of proof.

## IV. DISCUSSION

Defendants Holzer Medical Center, Holzer Clinic, and Renuka Kandula, M.D., assert that this case should be dismissed because diversity of citizenship does not exist between Plaintiff and Defendants. Defendants argue that the Decedent was a citizen of Ohio prior to her death and not a citizen of California as alleged by Plaintiff. Accordingly, the essential question in resolving Defendants' Rule 12(b)(1) Motions to Dismiss is whether the parties are in fact citizens of different states. If the Plaintiff is unable to persuade the Court that such diversity exists, this Court lacks subject matter jurisdiction and must grant Defendants' Motions to Dismiss.

The state citizenship of an individual, for the purpose of resolving Section 1332(a) diversity questions, is equated with the individual's domicile. *See Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973); *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). In the eyes of the law, domicile is not synonymous with a person's residence. *See Kaiser v. Loomis*, 391 F.2d 1007, 1009 (6th Cir. 1968). Moreover, a person can only have one domicile at a time for purposes of diversity jurisdiction–"a previous domicile cannot be lost until another is adequately established." *See Eastman v. Univ. of Michigan*, 30 F.3d 670, 672-73 (6th Cir. 1994); *see also Von Dunser*, 915 F.2d at 1072. A determination of a party's domicile is a two-part test. First, "to acquire a domicile within a particular state, a person must be physically present in the state." *Stifel, supra*, 477 F.2d at 1120. Second, "the person must have either the intention to make his

home there indefinitely or the absence of an intention to make his home elsewhere." *Id.*

The determination of domicile presents a mixed question of fact and law. *Bank One, Texas, N.A. v. Montle,* 964 F.2d 48, 51 (1st Cir. 1992). When reviewing diversity jurisdiction claims, courts typically take into account a variety of factors indicating the extent of a particular party's ties to the purported domicile, including:

> [c]urrent residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; memberships in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver licenses and other automobile registration; [and] payment of taxes.

Wright, Miller, and Cooper, Federal Practice and Procedure §3612 (2d ed. 1984). No single one of these factors is dispositive, and the analysis does not focus simply on the number of contacts with the purported domicile, but also their substantive nature. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1984).

In cases brought by a representative of a decedent, such as the instant one, Plaintiff's domicile is deemed as being the same as the decedent for diversity purposes. *See* 28 U.S.C. §1332(c)(2).

In this case, with regard to the first part of the test, it is uncontroverted that the Decedent, Dealena Bell, was physically present in Ohio at the time of her death. She traveled to Ohio sometime in 2003 or 2004 and remained there until her death in September 2007.

The act of physically relocating to Ohio, however, is not dispositive. As Justice Holmes has made clear, "the essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere." *Williamson v. Osenton*, 232 U.S. 619, 624 (1914). Thus, Plaintiff must demonstrate that the Decedent did not intend to remain in Ohio, or that she

intended to live anywhere other than Ohio.  When inquiring into whether such intent exists, "the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction…" *Nichols, supra*, 318 F.3d at 677.  Such evidence includes statements of intent, motive for establishing domicile, voter registration, and other economic or social interests that indicate a party's desire to remain in a given state.  *See Shoaf v. Fitzpatrick*, 104 F.2d 290, 292 (6th Cir. 1939); *Stifel, supra*, 477 F.2d at 1122, 1125 ("Courts usually will examine the physical facts in an effort to ascertain domiciliary intent, and will often assign a domicile on the basis of what appears to be the choice of a home.").

      Plaintiff has presented testimony from a friend of the Decedent's in Ohio, Gerald Arnold, as well as declarations from her sisters.  Plaintiff argues, based on this testimony, that the Decedent always planned to return to California.  Plaintiff also offers the lack of evidence of opening a bank account, registering to vote, joining a club or church, purchasing property, etc., as evidence that the Decedent did not intend to remain in Ohio.  However, it could be that the Decedent simply did not have the means to open a bank account or a charge account.  Plaintiff has not offered any evidence that the Decedent did any of these things in California.  It appears from the testimony that the Decedent lived very simply and did not require much.  There is no evidence that the Decedent had any firm plans to return to California, e.g. a plane, bus or train ticket to California; or that she maintained a residence or any property in California.  Plaintiff was questioned during her deposition as to what concrete plans the Decedent had to leave Ohio at the time of her death.  Plaintiff responded "I don't think she had concrete plans, but I think because of the situation that was arising, she was going to ask her family to come back."  (Pl. Depo. at 125).  Further, Plaintiff argues that the Decedent always called California home, but agreed that

sometimes people refer to where they grew up as being home. (Pl. Depo. at 124-125).

The Court, however does not find this testimony and the hearsay statements of the Decedent sufficient to establish that the Decedent did not intend to remain in Ohio. Plaintiff cannot provide any evidence that the Decedent did not consider Ohio her permanent home. The Decedent may have stated that she always wanted to return to California, but there is no evidence that she had any firm plans to do so. Courts have recognized that there is a difference between intention and desire. *See Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 702 (1st Cir. 1979); *Bergenstein v. Sawhny*, 2007 U.S. Dist. LEXIS 22532 (N.D. Ohio 2007). As the Fifth Circuit stated in *Hardin v. McAvoy*, 216 F.2d 399, (5th Cir.1954), in determining where a plaintiff is domiciled, "[i]t is not important if there is within contemplation a vague possibility of eventually going elsewhere, or even of returning whence one came. If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile. . . . [A] mere detached, indefinite and ambulatory future intention to possibly or probably effect a change in domicile, not attached to and fixed at a particular residence at a particular place and time is of no real significance." *Id.* at 402-03. Likewise, the Supreme Court has held that a so called "floating intention" to move at some undetermined time in the future will not defeat the acquisition of a new domicile for diversity purposes. Wright, Miller, and Cooper, Federal Practice and Procedure § 3613 (2d ed. 1984) (*citing Gilbert v. David*, 235 U.S. 561, 569 (1915)).

Courts have held that an intention to return to a former domicile upon the occurrence of some specific reasonably foreseeable event, such as a graduation or end to a training period is not a "floating intention." *See, e.g., Gates v. Commissioner of Internal Revenue*, 199 F.2d 291, 294 (10th Cir. 1952). Plaintiff theorizes that the Decedent planned to return to California upon the

death of her employer, Mr. Enyon. However, someone's death does not have a definite date and was not even a reasonably foreseeable event.

In *Hawes*, 598 F.2d 698, the First Circuit held that a plaintiff's move to the State of New York for the purposes of obtaining medical treatment was considered a deliberate decision to be domiciled in the State of New York for an indefinite period of time. *Hawes*, 598 F.2d at 702. There is no evidence that Plaintiff, in the instant case, moved to Ohio for any specific reason, but she did secure employment and a residence with Mr. Eynon. Further, Mr. Eynon conveyed title to his trailer and 2-acre lot, as well as the titles to several vehicles to the Decedent. Even the Decedent's sister testified that the Decedent intended to remain in Ohio to care for Mr. Eynon. (Mooney Decl.). Therefore, it appears that Plaintiff intended to remain in Ohio for an indefinite period of time.

## V. CONCLUSION

Based on the aforementioned discussion, the Defendants' Motions to Dismiss for Lack of Jurisdiction are **GRANTED**.

The Clerk shall remove Documents 27 and 64 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**